

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-23-2007

# Soetanto v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5005

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Soetanto v. Atty Gen USA" (2007). *2007 Decisions*. Paper 1756.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1756

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT
OF APPEALS
FOR THE THIRD CIRCUIT

―――――――

NO. 05-5005

―――――――

TONNY SOETANTO
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES
Respondent

―――――――

On Petition for Review of an Order of the Board of Immigration Appeals
No. A79-319-032
Immigration Judge:  Hon. Miriam K. Mills

―――――――

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 17, 2007

BEFORE:  McKEE, AMBRO and STAPLETON,
Circuit Judges

(Opinion Filed: January 23, 2007)

―――――――

STAPLETON, Circuit Judge:

Petitioner Tonny Soetanto is a native and citizen of Indonesia. He claims to have suffered past persecution, and to fear future persecution, there because he is a Christian of Chinese ethnicity. He seeks review of an order of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture, an order that was affirmed by the Board of Immigration Appeals without opinion.

The IJ concluded that Soetanto's asylum application was time barred and we lack jurisdiction to review that determination. 8 U.S.C. § 1158(a)(3). Accordingly, we will dismiss his petition to the extent it relates to asylum. We will deny his petition to the extent it relates to his other claims.

The IJ accepted Soetanto's testimony, which she accurately summarized as follows:

> Today respondent testified that he fears returning to Indonesia because Muslims are planning to establish a Muslim state, governed by Shari'a (government of Shari'a (indiscernible)). He bases his fear on reports from his parents made to him about two to three years ago. He further based his fear that an Islamic state would be established in Indonesia on previous harm he suffered there.
> Specifically he cited how he was robbed in 1998 by (indiscernible)

2

on route from a bus stop. He also cited, in 1992 to 1994, incident in which his father's store was subjected to extortion by security guards. He further complained how Muslims would demand donations for building a Mosque, and calling his father ethnic and religious epithets if the father did not (indiscernible) donate enough money. He also cited an incident when he was harassed by (indiscernible) singing in the store so loud as to demand payment to stop their singing.

And finally, respondent testified about the 1998 civil rioting in Jakarta, which spread to Surabaya, in which ethnic Chinese were violently targeted by (indiscernible). After repeatedly questioning respondent as to whether he suffered any further harm after 1998, the testimony elicited showed that he evidently had suffered no harm after 1998.

App. at 106.

The IJ observed that "current country conditions show no repetition of the . . . civil rioting that occurred in 1998 and the . . . targeting of ethnic Chinese without any intervention by government officials." App. at 107. She further noted that "conspicuously absent" from the record was any indication that Soetanto's parents had experienced any problems after they moved to Surabaya following the 1998 riots. App. at 108. While acknowledging that some "interreligious conflict still exists in Indonesia, i.e., central Sulawesi and Malukus," the IJ pointed out that Soetanto had "no connection to any of these areas of continuing conflict." App. at 108.

Finally, with respect to Soetanto's fears about the future creation of a Muslim state, the IJ pointed to the International Religious Freedom Report indicating that "proposals to adopt Shari'a [have] been voted down on a nationwide basis by parliament, and also by the largest Muslim social organization." App. at 109.

The IJ did not err in concluding that Soetanto had not suffered "persecution" in the

past as we have defined that term for these purposes. *See Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir. 1993) (defining persecution as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom"). Moreover, substantial evidence clearly supports the IJ's determination that Soetanto had failed to establish a well-founded fear of future persecution if he were to return to Indonesia. Based on our review of the record and accepting Soetanto's testimony as credible, we find this case indistinguishable from *Lie v. Ashcroft*, 396 F.3d 530 (3d Cir. 2005), where we denied a similar petition for review.

Accordingly, the petition for review will be DISMISSED insofar as it relates to asylum and will be DENIED insofar as it relates to withholding of removal and relief under the Convention Against Torture.